**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Brian Krowiak,** ) | **CASE NO. 1:18 CV 629** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **BWXT Nuclear Operations Group, Inc.** ) | |
| **aka Babcock & Wilcox Nuclear** ) | |
| **Operations Group, Inc., et al.,** ) | |
| ) | **Memorandum of Opinion and Order** |
| **Defendants.** ) | |

## INTRODUCTION

This matter is before the Court upon Defendant United Automobile, Aerospace and Agricultural Implement Workers of America-UAW, Local 2262, B&W Unit's Motion to Dismiss Second Amended Complaint (Doc. 40) ("Union's Motion to Dismiss"). For the following reasons, the Union's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

## FACTS

The following facts are taken from Plaintiff's Second Amended Complaint. Beginning in 2012, Plaintiff Brian Krowiak worked as a Non-Destructive Testing Inspector at Defendant

BWXT's manufacturing and testing facility in Euclid, Ohio. His job duties were generally to perform visual and dimensional weld inspections in the fabrication of complex parts and assemblies. BWXT is a unionized employer, and at all relevant times, Plaintiff was a member of Defendant UAW Local 2262 ("the Union"). Plaintiff's employment was covered by a collective bargaining agreement (the "CBA") between BWXT and the Union.

Plaintiff's mother suffered from paranoid schizophrenia and passed away in November of 2014. Plaintiff informed BWXT that his mother's passing was difficult for him and that it may be affecting his work performance. BWXT viewed Plaintiff as having an "odd personality" and being "quirky and eccentric." (Second Am. Compl. ¶15). BWXT employees, including Plaintiff's supervisors, were aware that Plaintiff's mother suffered from paranoid schizophrenia. Plaintiff claims that he "was subjected to frequent verbal abuse while employed by BWXT as a result of his perceived disability deriving from BWXT's knowledge that [his] mother suffered from paranoid schizophrenia and [his] difficulty in coping with [her death]." (*Id.* ¶ 18). Plaintiff has no history of being diagnosed by a medical professional with any mental health disorder. (*Id.* ¶ 31).

At some unspecified time, a Senior Technician in Plaintiff's department by the last name of Cooper told new hires that Plaintiff was a "felon." Cooper was suspended for one week for this conduct; nevertheless, Plaintiff asserts that new hires whom he was assigned to train did not respect him and called him names, including "faggot" and "piece of shit." (*Id.* ¶17). BWXT knew of the verbal abuse that Plaintiff experienced but took no action to stop or prevent it, or to otherwise control the work environment so that the verbal abuse would not occur.

According to Plaintiff, the standards and procedures that he was to follow were

2

constantly changing. He claims that BWXT's managers and supervisors judged employees and enforced standards differently for employees performing the same job functions as him, including with respect to on-the-job testing performance.

In December of 2014, BWXT gave Plaintiff a verbal warning for "poor job performance" for failing to follow certain procedures. He was given another verbal warning in February of 2015 for "failure to follow instructions, policies and/or procedures" in connection with a part that Plaintiff allowed to be processed despite being purportedly defective. (*Id.* ¶ 18). He received a written warning in March of 2015 for poor job performance for improperly inspecting a part. Plaintiff refused to sign the incident reports for any of the warnings because they were all allegedly without merit. Prior to his mother's death, Plaintiff received no verbal or written warnings regarding his work performance. (*Id.* ¶ 30).

Plaintiff was called into a meeting on April 30, 2015, with his supervisor and the Chairman of the Union. He alleges that he was interrogated about the procedures he followed during his shift on April 28, 2015, and the parts that he accepted that day. Plaintiff claims that BWXT falsely accused him of fraud and falsification of company reports or records during several meetings that apparently occurred later that same day. Following the meetings, Plaintiff was suspended without pay pending investigation.

On May 29, 2015, BWXT counsel, Alex Jones, and BWXT's Employee Labor Relations Manager, Eleni Vosicky, prepared an internal memorandum, titled "Deliberate Malpractice Investigation." The memo notes that Plaintiff's co-workers "seemed to express, to one extent or another, a level of discomfort concerning [Plaintiff's] adherence to procedures. None could site a specific time when they observed directly a violation occurring." (*Id.*, Ex. F). The memo further

states that many of Plaintiff's coworkers knew that his mother suffered from schizophrenia. It also notes that his Union representative, Andy Kurilko, advised the BWXT investigative team that "some time ago" Plaintiff had started experiencing unusual sleeping habits that caused him to lose sleep. According to Kurilko, Plaintiff saw a specialist, who informed him that he was suffering from schizophrenia but he did not seek treatment or follow up in any way. (*Id.*)

In addition, the memo revealed that Jones had consulted with Dr. Wayne Sloop, a clinical psychologist who does work for BWXT's Lynchburg, Virginia facility. Jones asked Dr. Sloop about schizophrenia in relation to the investigation of an employee. The memo summarizes their discussion as follows:

> Dr. Sloop indicated that schizophrenia could have affected the employee in ways which would have a bearing on the investigation. First Mr. Krowiak's age was consistent with the age of onset of the illness. He may have not had the full blown set of symptoms when he was hired. A schizophrenic would seem to retreat into their own world or go "someplace else." Given the nature of the inspection sequence, his behavior would be consistent with the disease. The sudden trip to Buenos Aires could be symptomatic of the illness. Parts of the inspection procedure could go by him and he would not realize that it had happened and pick up at a different stage of the illness. His lack of recall of these incidents was very likely depending on the progress of the illness. He just wouldn't have processed it.

The memo states that "[t]he inspection team has determined that, despite the issue of Mr. Krowiak's illness, this is Deliberate Malpractice....The clear failure to do the inspection when he had indicated on the forms that he had performed according to procedures is, in our opinion, sufficient." (*Id.*)

BWXT told Plaintiff that, to conclude its investigation, he would need to submit to a full psychological evaluation at BWXT's expense. Plaintiff consulted with his Union representative, who advised him that the evaluation was a condition of his employment. Plaintiff alleges that

4

BWXT threatened to call the FBI to investigate Plaintiff if he did not cooperate with the company's investigation, but it never did so.

On June 16, 2015, BWXT required Plaintiff to execute a Statement of Non-Confidentiality/Fitness for Duty Evaluation form on the letterhead of John A. Glovan, Psy.D. with the Behavioral Wellness Group in Mentor, Ohio. According to Plaintiff, Vosicky reported to The Behavioral Wellness Group many false facts and assumptions regarding Plaintiff's personal and medical history. Vosicky informed them that "[t]he reason for this visit is to establish whether [Plaintiff] is suffering from a mental disorder." (Second Am. Compl., Ex. H). She further reported that Plaintiff had been diagnosed with schizophrenia but never followed up on the diagnosis. (*Id.*). She explained to the Behavioral Wellness Group that the purpose of BWXT's "investigation is to establish whether [Plaintiff] knowingly performed his work without following the procedures. The assumption is that if [he] was not mentally aware of his actions while performing his work, he was not knowingly choosing to not follow the procedures." (*Id.*).

Plaintiff met with Glovan for four psychological evaluation sessions in June of 2015. He reported to Glovan that he was missing things at work, having difficulty with his memory, and had poor attention and concentration at work. Following the sessions, Glovan provided a Report of Psychological Evaluation to BWXT on July 12, 2015. Plaintiff was not provided with a copy of the evaluation until after his termination. Plaintiff alleges that the evaluation contained numerous factual inaccuracies and misquoted Plaintiff on significant topics. In the evaluation, Glovan concluded that Plaintiff had a "thought disorder and deeply ingrained personality issues." (Second Am. Compl. ¶ 49). The Evaluation recommended that Plaintiff see a psychiatrist for a medical assessment. Plaintiff alleges that Glovan's conclusion is invalid.

5

BWXT terminated Plaintiff's employment on July 22, 2015. Through its investigation, it concluded that Plaintiff had violated various "rules and regulations on conduct and behavior from the Babcock and Wilcox NOC-Euclid Hourly Employee Handbook." (*Id.* at ¶ 51).

Following his termination by BWXT, Plaintiff filed a grievance with the Union. On December 18, 2015, the Union informed Plaintiff that it found his grievance lacked merit "because the company investigation showed that the Company had just cause to issue the discipline." The Union withdrew the grievance filed on Plaintiff's behalf. (*Id.* ¶ 56).

On September 18, 2015, Plaintiff filed a charge against BWXT with the Equal Employment Opportunity Commission ("EEOC"). In its response to the charge, BWXT noted that the purpose of the fitness for duty psychological examination "was to determine if Mr. Krowiak had any willful intent in providing erroneous information upon completing inspections." (*Id.*, Ex. G). BWXT advised the EEOC that the result of the examination was that Plaintiff was "diagnosed with a condition that provided an explanation for his lack of adherence to procedures." (*Id.*) BWXT explained that, nevertheless, Plaintiff "was terminated simply due to his poor job performance in entering false information on company documents while failing to follow procedures." (*Id.*) The EEOC concluded that, based on the evidence it had before it, "it appear[ed] unlikely that [it would] be able to establish that [Plaintiff was] discriminated against by being discharged because of [his] medical condition and genetic information." (*Id.*, Ex. I). Accordingly, the EEOC declined to take further action on the charge. It issued Plaintiff's right to sue letter on December 19, 2017.

Plaintiff alleges that BWXT has falsely communicated to governmental customers and contractors that Plaintiff falsified company records and defrauded the company, making it

6

impossible for him to find similar employment with another company that provides parts or materials to the U.S. Government or government contractors.

Plaintiff filed suit against BWXT and the Union on March 19, 2018. In his Second Amended Complaint, he brings seven claims for relief: Count I is a claim against BWXT and the Union for violation of the Americans with Disabilities Act ("ADA"); Count II is a claim against BWXT and the Union for violation of the Ohio Civil Rights Act ("OCRA"); Count III is a claim against BWXT and the Union for violation of Ohio public policy; Count IV is a hostile work environment claim under the ADA and OCRA against BWXT and the Union; Count V is a defamation claim against BWXT; Count VI is a false light invasion of privacy claim against BWXT; and Count VII is a claim for breach of the CBA against BWXT. Count III has been dismissed. (Doc. 45). The Union now moves to dismiss Counts I, II, and IV as against it. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

**LAW AND ANALYSIS**

**A. Count I - ADA disability discrimination**

The Union argues that Count I must be dismissed as against it because the Second Amended Complaint establishes on its face that Plaintiff failed to exhaust his administrative remedies with respect to his disability discrimination claim by filing an EEOC charge against the Union.

Before a plaintiff brings a lawsuit in federal court alleging a violation of the ADA, he must first exhaust his administrative remedies. *Terre v. Hopson*, 708 F. App'x 221, 226 (6th Cir. 2017); *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) ("The exhaustion of administrative remedies is a condition precedent to an ADA action."). This means an employee must first file a charge of discrimination with the EEOC within 180 days of the alleged

discrimination (or with the state agency within 300 days), and he must receive a right-to-sue letter from the EEOC before filing suit. *See* 42 U.S.C. §§ 12117(a) and 2000e–5(e)(1); *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 309 (6th Cir. 2000). "Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of an ADA ...action." *Hoover*, 30 F. App'x at 513; *see also Hykes v. Lew*, 2017 WL 4863108, at *2 (6th Cir. Mar. 1, 2017).

"A corollary of this general rule is that a party must be *named* in the EEOC charge before that party may be sued under Title VII." *Romain v. Kurek,* 836 F.2d 241, 245 (6th Cir.1987). The named-party rule has two purposes: "First, the charge serves to notify the defendant of the discrimination claim alleged against him.... Second, by naming the charged party and bringing him before the EEOC, that person is able to participate in conciliation efforts directed at securing voluntary compliance with the Act." *Id.* at 245. Courts apply a "limited exception" to this rule, however, where there is a "clear identity of interest" between the party named in the EEOC charge and the unnamed party that was actually sued. *Szoke v. United Parcel Serv. of Am., Inc.,* 398 Fed. Appx. 145, 153–54 (6th Cir. 2010).

The Sixth Circuit has adopted two tests for determining whether the identity of interest exception applies. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 411 (6th Cir.1999). Under the first, "an identity of interest exists when the unnamed party possesses sufficient notice of the claim to participate in voluntary conciliation proceedings." *Id.* at 411 (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 905 (7th Cir. 1981)). Under the second, a court looks to four factors to determine the relationship between the named and unnamed parties:

> (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2)

9

> Whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Romain,* 836 F.2d at 246 (alterations omitted) (citing *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3rd Cir.1977)).

Citing the right-to-sue letter, which refers exclusively to BWXT, the Union argues that Plaintiff's disability discrimination claim against the Union must be dismissed because it was not named in the EEOC charge. In response, Plaintiff argues that his EEOC charge must be liberally construed, that the Union can be liable for discrimination as an employer, that the Court should waive the requirement of obtaining a right-to-sue letter against the Union, and that the Union and BWXT share an identity of interest.

To begin, Plaintiff's argument that the Union can be liable for discrimination as an employer is irrelevant. The Complaint makes clear that BWXT was Plaintiff's employer, and that he was merely a member–not an employee–of the Union. Plaintiff alleges that he "worked for BWXT," that he "accept[ed] employment with BWXT," that "BWXT is a unionized employer," that "Plaintiff was a member of UAW Local 2262," and that "BWXT terminated [his] employment." Nowhere in the Second Amended Complaint does Plaintiff allege that the Union was his employer, that he worked for the Union, or that he was an employee of the Union. Plaintiff's claim that the charge should be liberally construed also misses the mark, as he does not cite any authority stating that a charge should be so liberally construed as to dispense with the named-party requirement.

Next, the Court rejects Plaintiff's request to deem the exhaustion requirement waived.

10

Although failure to exhaust is an affirmative defense that can be waived, the Union has not waived it. *See Romain v. Kurek*, 836 F.2d 241, 248 (6th Cir. 1987) (although "the naming requirement is not technically jurisdictional, it nevertheless operates like a statute of limitations in that if it is raised in a timely fashion it serves as a shield to prevent the commencement of the cause of action against the unnamed defendant").

Finally, although the Court is skeptical that the Union and BWXT share an identity of interest, the record is insufficiently developed to dismiss Count I against the Union on this basis. "Failure to exhaust administrative remedies ... is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter,* 259 Fed. Appx. 784, 786 (6th Cir. 2008). Courts are reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted. *Pfeil v. State St. Bank & Trust Co.,* 671 F.3d 585, 599 (6th Cir.2012). Only when "'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief'" should a court address an affirmative defense on a Rule 12(b)(6) motion. *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. Appx. 544, 546–48 (6th Cir. 2013) (citations omitted).

While Plaintiff has attached the right-to-sue letter and BWXT's response to the EEOC charge to his Second Amended Complaint, he did not attach the EEOC charge itself and has not alleged facts that allow the Court to conduct the identity-of-interest analysis. For example, the Second Amended Complaint does not address whether the Union had notice of the EEOC charge.[1] Indeed, in their briefing, neither party addressed all of the relevant factors that the Court

---

[1] In fact, BWXT's response to the charge suggests that its interests were aligned, at least to some extent, with the Union's. It explained that it asked Plaintiff to undergo the psychological examination on the basis of information provided to it

11

must consider. Some, potentially limited, discovery is necessary before the Court can determine whether the Union has a "clear identity of interest" with BWXT. *Id.* (reversing dismissal of plaintiff's Title VII claim for failure to exhaust because record was insufficiently developed for district court to conclude that defendants did not share an identity of interest).[2]

Thus, the Union's motion to dismiss Count I is denied.

### B. Count II - Violation of Ohio Civil Rights Act

Next, the Union moves to dismiss Count II, a disability discrimination claim under the Ohio Civil Rights Act. It argues that the claim is preempted by the Union's duty of fair representation and Section 301 of the Labor Management Relations Act ("LMRA"). Plaintiff addresses only Section 301 preemption and does not address the Union's argument that the claim is preempted under the Union's duty of fair representation.[3] Preemption by the Union's duty of fair representation and preemption by § 301 of the LMRA "are distinct legal doctrines."

---

by Plaintiff's Union representative.

[2] The Union cites several cases from New York holding that a union and an employer do not share an identity of interest. Although courts in the Second Circuit generally hold that a union and employer lack the clear identity of interest required to waive the exhaustion requirement, *see, e.g., Wells v. Mount Vernon Hosp.*, 2002 WL 1561099, at * 3 (S.D.N.Y. July 15, 2002), the Union has not identified any cases from the Sixth Circuit applying such a blanket rule, nor has the Court found any.

[3] In his original complaint, Plaintiff brought a claim for breach of the duty of fair representation against the Union. That claim is time-barred because it is subject to a six-month statute of limitations. *See Schoonover v. Consol. Freightways Corp. of Delaware*, 49 F.3d 219, 221-22, n.1 (6th Cir. 1995). The statute of limitations begins to run when the employee discovers, or should have discovered, the acts giving rise to the cause of action. *See id.* at 222. In this case, the statute of limitations began to run on December 18, 2015, when Plaintiff became aware that the Union determined that his grievance lacked merit. Plaintiff does not bring an independent claim for breach of the duty of fair representation in his Second Amended Complaint.

*Eggelston v. Nexteer Auto Corp.*, No. 16 CV 13368, 2017 WL 264486, at *3 (E.D. Mich. Jan. 20, 2017).

When a plaintiff's allegations fall within the scope of a union's duty of fair representation, federal labor law preempts a state law claim based on those allegations. *See, e.g., Maynard v. Revere Copper Prods., Inc.*, 773 F.2d 733 (6th Cir. 1985) ("The doctrine of preemption is firmly established in labor law. The duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation."). To determine whether the state law claim is preempted, a court must inquire "whether the state law claim alleges conduct that is within the scope of the union's duty of fair representation, i.e., its duty 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Eggelston v. Nexteer Automotive Corp.*, 2017 WL 264486, at * 4 (E.D. Mich. Jan. 20, 2017) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).

In Count II, Plaintiff alleges that he was "disciplined and discriminated against" as a result of the Union's perception that he was disabled and that his employment was "terminated without just cause" as a result. (Second Am. Compl. ¶ 94). He further claims that the Union affected his employment status in its handling of the Psychological Evaluation Sessions, Plaintiff's termination, and his grievance because of a perceived disability. (*Id.* at ¶ 96). These allegations necessarily raise questions about the Union's performance of its duty of fair representation–i.e., whether it served Plaintiff's interests without discrimination and with complete good faith and honesty. As such, the claim is preempted. *See Eggelston*, 2017 WL 264486 (holding that Plaintiff's race discrimination claim under the Michigan Civil Rights Act

was preempted by the union's duty of fair representation); *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 861 (6th Cir. 1988) (holding that the plaintiff's state law claim for sex discrimination was completely preempted); *Maynard*, 773 F.2d 733 (holding that plaintiff's state law claim that a union failed to adequately represent him because of his disability was preempted by the union's duty of fair representation).

Because a claim for breach of the duty of fair representation is time-barred, Count II is dismissed.

**C. Count IV - Hostile work environment**

In Count IV, Plaintiff brings a claim against the Union for hostile work environment under Ohio Revised Code § 4112.02. Relying on case law interpreting Title VII, 42 U.S.C. § 2000e-2, the Union moves to dismiss the claim. It argues that federal courts applying Title VII do not impose liability on labor organizations for hostile work environment claims unless they are sued as an employer. For example, in *Phillips v. UAW International*, the district court explained, "The hostile environment theory is based not merely on the prohibition against discrimination, but on discrimination 'with respect to...compensation, terms, conditions, or privileges of employment,' a phrase that is found in section (a), which regulates the conduct of employers, and not in section (c), which applies to labor unions." 149 F. Supp. 3d 790, 801 (E.D. Mich. 2016) (interpreting 42 U.S.C. § 2000e-2 (a) and (c)), *aff'd on other grounds*, 854 F.3d 323, 326–27 (6th Cir. 2017); *see also Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 742 (N.D. Ohio 2008).

Although case law interpreting Title VII is generally applicable to hostile work environment claims brought under the Ohio Civil Rights Act, the analysis in *Phillips* does not

14

apply in this instance. Unlike Title VII, the provision of the Ohio Civil Rights Act addressing labor unions *does* prohibit unions from discriminating with respect to employment conditions. Ohio Revised Code § 4112.02 (C)(2) states:

> It shall be an unlawful discriminatory practice...[f]or any labor organization to...[d]iscriminate against, limit the employment opportunities of, or otherwise adversely affect the employment status, wages, hours, **or employment conditions** of any person as an employee because of race, color, religion, sex, military status, national origin, disability, age, or ancestry.

Ohio Revised Code § 4112.02 (C)(2) (emphasis added). *See also Lopez v. Local Union No. 8, Int'l Bhd. of Elec. Workers*, 2014 WL 1333181, at *4 (N.D. Ohio Mar. 31, 2014) (noting that "Ohio case law suggests § 4112.02(C) applies whenever a labor organization discriminates against any of its members, regardless of whether that member is employed by the union"). In addition, the Sixth Circuit recently questioned the validity of the district court's analysis in *Phillips. See Phillips v. UAW Int'l*, 854 F.3d 323, 326–27 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 980, 200 L. Ed. 2d 248 (2018) ("[T]here are good reasons to question the district court's reading. For one thing, at least one other circuit has come to the opposite conclusion.... For another, applying the usual tools of statutory interpretation to § 2000e–2(c)(1)'s text might support a reading that Title VII prohibits unions from creating hostile work environments, just like it does for employers.") (internal citations omitted).

Although it is questionable whether Plaintiff has pled sufficient facts to state a plausible hostile work environment claim against the Union,[4] the Union has not moved to dismiss the claim on this basis. Because the only argument the Union raises is that it can only be sued for

---

[4] Many of the facts that Plaintiff cites in support of his hostile work environment claim relate to actions that Plaintiff alleges were taken by or on behalf of BWXT, not the Union.

15

hostile work environment as an employer, its motion to dismiss Count IV is denied.

**CONCLUSION**

For the foregoing reasons, the Union's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 10/11/18