**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Brian Krowiak, | CASE NO. 1:18 CV 629 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| BWXT Nuclear Operations Group, Inc. aka Babcock & Wilcox Nuclear Operations Group, Inc., et al., | |
| | **Memorandum of Opinion and Order** |
| Defendants. | |

## INTRODUCTION

This matter is before the Court upon BWXT Nuclear Operations Group, Inc.'s Partial Motion to Dismiss the Second Amended Complaint ("BWXT's Motion to Dismiss" (Doc. 41)). For the following reasons, BWXT's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

## FACTS

The following facts are taken from Plaintiff's Second Amended Complaint. Beginning in 2012, Plaintiff Brian Krowiak worked as a Non-Destructive Testing Inspector at Defendant BWXT's manufacturing and testing facility in Euclid, Ohio. His job duties were generally to

perform visual and dimensional weld inspections in the fabrication of complex parts and assemblies. BWXT is a unionized employer, and at all relevant times, Plaintiff was a member of Defendant UAW Local 2262 ("the Union"). Plaintiff's employment was covered by a collective bargaining agreement (the "CBA") between BWXT and the Union.

Plaintiff's mother suffered from paranoid schizophrenia and passed away in November of 2014. Plaintiff informed BWXT that his mother's passing was difficult for him and that it may be affecting his work performance. BWXT viewed Plaintiff as having an "odd personality" and being "quirky and eccentric." (Second Am. Compl. ¶15). BWXT employees, including Plaintiff's supervisors, were aware that Plaintiff's mother suffered from paranoid schizophrenia. Plaintiff claims that he "was subjected to frequent verbal abuse while employed by BWXT as a result of his perceived disability deriving from BWXT's knowledge that [his] mother suffered from paranoid schizophrenia and [his] difficulty in coping with [her death]." (*Id.* ¶ 18). Plaintiff has no history of being diagnosed by a medical professional with any mental health disorder. (*Id.* ¶ 31).

At some unspecified time, a Senior Technician in Plaintiff's department by the last name of Cooper told new hires that Plaintiff was a "felon." Cooper was suspended for one week for this conduct; nevertheless, Plaintiff asserts that new hires whom he was assigned to train did not respect him and called him names, including "faggot" and "piece of shit." (*Id.* ¶17). BWXT knew of the verbal abuse that Plaintiff experienced but took no action to stop or prevent it, or to otherwise control the work environment so that the verbal abuse would not occur.

According to Plaintiff, the standards and procedures that he was to follow were constantly changing. He claims that BWXT's managers and supervisors judged employees and

enforced standards differently for employees performing the same job functions as him, including with respect to on-the-job testing performance.

In December of 2014, BWXT gave Plaintiff a verbal warning for "poor job performance" for failing to follow certain procedures. He was given another verbal warning in February of 2015 for "failure to follow instructions, policies and/or procedures" in connection with a part that Plaintiff allowed to be processed despite being purportedly defective. (*Id.* ¶ 18). He received a written warning in March of 2015 for poor job performance for improperly inspecting a part. Plaintiff refused to sign the incident reports for any of the warnings because they were all allegedly without merit. Prior to his mother's death, Plaintiff received no verbal or written warnings regarding his work performance. (*Id.* ¶ 30).

Plaintiff was called into a meeting on April 30, 2015, with his supervisor and the Chairman of the Union. He alleges that he was interrogated about the procedures he followed during his shift on April 28, 2015, and the parts that he accepted that day. Plaintiff claims that BWXT falsely accused him of fraud and falsification of company reports or records during several meetings that apparently occurred later that same day. Following the meetings, Plaintiff was suspended without pay pending investigation.

On May 29, 2015, BWXT counsel, Alex Jones, and BWXT's Employee Labor Relations Manager, Eleni Vosicky, prepared an internal memorandum, titled "Deliberate Malpractice Investigation." The memo notes that Plaintiff's co-workers "seemed to express, to one extent or another, a level of discomfort concerning [Plaintiff's] adherence to procedures." Nevertheless, "[n]one could site a specific time when they observed directly a violation occurring." (*Id.*, Ex. F). The memo further states that many of Plaintiff's coworkers knew that his mother suffered

3

from schizophrenia. It also notes that his Union representative, Andy Kurilko, advised the BWXT investigative team that "some time ago" Plaintiff had started experiencing unusual sleeping habits that caused him to lose sleep. According to Kurilko, Plaintiff saw a specialist, who informed him that he was suffering from schizophrenia but he did not seek treatment or follow up in any way. (*Id.*)

In addition, the memo revealed that Jones had consulted with Dr. Wayne Sloop, a clinical psychologist who does work for BWXT's Lynchburg, Virginia facility. Jones asked Dr. Sloop about schizophrenia in relation to the investigation of an employee. The memo summarizes their discussion as follows:

> Dr. Sloop indicated that schizophrenia could have affected the employee in ways which would have a bearing on the investigation. First Mr. Krowiak's age was consistent with the age of onset of the illness. He may have not had the full blown set of symptoms when he was hired. A schizophrenic would seem to retreat into their own world or go "someplace else." Given the nature of the inspection sequence, his behavior would be consistent with the disease. The sudden trip to Buenos Aires could be symptomatic of the illness. Parts of the inspection procedure could go by him and he would not realize that it had happened and pick up at a different stage of the illness. His lack of recall of these incidents was very likely depending on the progress of the illness. He just wouldn't have processed it.

The memo states that "[t]he inspection team has determined that, despite the issue of Mr. Krowiak's illness, this is Deliberate Malpractice....The clear failure to do the inspection when he had indicated on the forms that he had performed according to procedures is, in our opinion, sufficient." (*Id.*)

BWXT told Plaintiff that, to conclude its investigation, he would need to submit to a full psychological evaluation at BWXT's expense. Plaintiff consulted with his Union representative, who advised him that the evaluation was a condition of his employment. Plaintiff alleges that

4

BWXT threatened to call the FBI to investigate him if he did not cooperate with the company's investigation, but it never did so.

On June 16, 2015, BWXT required Plaintiff to execute a Statement of Non-Confidentiality/Fitness for Duty Evaluation form on the letterhead of John A. Glovan, Psy.D. with the Behavioral Wellness Group in Mentor, Ohio. According to Plaintiff, Vosicky reported to The Behavioral Wellness Group many false facts and assumptions regarding Plaintiff's personal and medical history. Vosicky informed them that "[t]he reason for this visit is to establish whether [Plaintiff] is suffering from a mental disorder." (Second Am. Compl., Ex. H). She further reported that Plaintiff had been diagnosed with schizophrenia but never followed up on the diagnosis. (*Id.*). She explained to the Behavioral Wellness Group that the purpose of BWXT's "investigation is to establish whether [Plaintiff] knowingly performed his work without following the procedures. The assumption is that if [he] was not mentally aware of his actions while performing his work, he was not knowingly choosing to not follow the procedures." (*Id.*).

Plaintiff met with Glovan for four psychological evaluation sessions in June of 2015. He reported to Glovan that he was missing things at work, having difficulty with his memory, and had poor attention and concentration at work. Following the sessions, Glovan provided a Report of Psychological Evaluation to BWXT on July 12, 2015. Plaintiff was not provided with a copy of the evaluation until after his termination. Plaintiff alleges that the evaluation contained numerous factual inaccuracies and misquoted Plaintiff on significant topics. In the evaluation, Glovan concluded that Plaintiff had a "thought disorder and deeply ingrained personality issues." (Second Am. Compl. ¶ 49). The Evaluation recommended that Plaintiff see a psychiatrist for a medical assessment. Plaintiff alleges that Glovan's conclusion is invalid.

BWXT terminated Plaintiff's employment on July 22, 2015. Through its investigation, it concluded that Plaintiff had violated various "rules and regulations on conduct and behavior from the Babcock and Wilcox NOC-Euclid Hourly Employee Handbook." (*Id.* at ¶ 51).

Following his termination by BWXT, Plaintiff filed a grievance with the Union. On December 18, 2015, the Union informed Plaintiff that it found his grievance lacked merit "because the company investigation showed that the Company had just cause to issue the discipline." The Union withdrew the grievance filed on Plaintiff's behalf. (*Id.* ¶ 56).

On September 18, 2015, Plaintiff filed a charge against BWXT with the Equal Employment Opportunity Commission ("EEOC"). In its response to the charge, BWXT noted that the purpose of the fitness for duty psychological examination "was to determine if Mr. Krowiak had any willful intent in providing erroneous information upon completing inspections." (*Id.*, Ex. G). BWXT advised the EEOC that the result of the examination was that Plaintiff was "diagnosed with a condition that provided an explanation for his lack of adherence to procedures." (*Id.*) BWXT explained that, nevertheless, Plaintiff "was terminated simply due to his poor job performance in entering false information on company documents while failing to follow procedures." (*Id.*) The EEOC concluded that, based on the evidence it had before it, "it appear[ed] unlikely that [it would] be able to establish that [Plaintiff was] discriminated against by being discharged because of [his] medical condition and genetic information." (*Id.*, Ex. I). Accordingly, the EEOC declined to take further action on the charge. It issued Plaintiff's right to sue letter on December 19, 2017.

Plaintiff alleges that BWXT has falsely communicated to governmental customers and contractors that Plaintiff falsified company records and defrauded the company, making it

6

impossible for him to find similar employment with another company that provides parts or materials to the U.S. Government or government contractors.

Plaintiff filed suit against BWXT and the Union on March 19, 2018. In his Second Amended Complaint, he brings seven claims for relief: Count I is a claim against BWXT and the Union for violation of the Americans with Disabilities Act ("ADA"); Count II is a claim against BWXT and the Union for violation of the Ohio Civil Rights Act ("OCRA"); Count III is a claim against BWXT and the Union for violation of Ohio public policy; Count IV is a hostile work environment claim under the ADA and OCRA against BWXT and the Union; Count V is a defamation claim against BWXT; Count VI is a false light invasion of privacy claim against BWXT; and Count VII is a claim for breach of the CBA against BWXT. Count III has been dismissed. (Doc. 45). BWXT now moves to dismiss Count I to the extent it raises a hostile work environment claim under the ADA, and Counts IV-VII. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth Circuit:

7

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

## **LAW AND ANALYSIS**

### **A. Counts I and IV - Hostile work environment**

BWXT moves to dismiss Plaintiff's hostile work environment claims against it. Plaintiff raises the claims under both the ADA and the OCRA, which are subject to the same standard. To state a claim for hostile work environment based on disability, Plaintiff must allege that: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) there is a basis for employer liability. *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460–61 (6th Cir. 2002) (citations omitted); *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St. 3d 169, 729 N.E.2d 726 (2000). BWXT argues that Plaintiff has failed to allege facts sufficient to establish the

8

second and third elements of the claim.[1]

To be actionable, "the workplace must be permeated with 'discriminatory intimidation, ridicule or insult' sufficiently severe or pervasive to alter the conditions of employment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). In determining whether a hostile work environment existed, the court looks to the totality of the circumstances. *Rice v. Cuyahoga Cty. Dep't of Justice*, 970 N.E.2d 470, 478–79 (Ohio Ct. App. 8th Dist. 2005) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 787–88, (1998)). The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and that the victim must subjectively regard as abusive. *Id.* Factors that a court can consider in determining whether the behavior meets this standard include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted).

BWXT correctly argues that some of the alleged abuse that Plaintiff suffered was not "based on" his perceived disability. Indeed, his own allegations state that the new hires called him "faggot" and "piece of shit" because a senior technician had told them that he was a felon–not because he was perceived to be suffering from a mental illness. (Second Am. Compl. ¶

---

[1] In a footnote, BWXT states that Plaintiff has not alleged facts that would demonstrate that it was negligent in controlling work conditions. (Doc. 41, at 7 n.2). Plaintiff, though, alleges that "BWXT had knowledge of the verbal abuse of Plaintiff and took no action to stop or prevent the verbal abuse, or to otherwise control the work environment such that verbal abuse of Plaintiff would not occur." (Second Am. Compl. ¶ 19). BWXT does not address this argument in its reply brief. To the extent that BWXT moves to dismiss on the basis that Plaintiff failed to allege the fifth element, the motion is denied.

9

17); *see, e.g., Hampel v. Food Ingredients Specialties, Inc.,* 89 Ohio St.3d 169, 176–77, 729 N.E.2d 726 (2000) ("Hord's outburst against [Hampel] was personal and not gender-based...not because of his sex, but because he was Hampel. However, R.C. 4112.02(A) does not reach disparate treatment on account of personal animosity; no matter how severe or pervasive the conduct, harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a prohibited classification"); *see also Rice*, 970 N.E.2d at 478-79.

On the other hand, Plaintiff specifically alleges in his Second Amended Complaint that his perceived disability was the reason for the written warnings he received, the false accusations that he was not performing his job properly, the false accusations of fraud and that he had falsified company records, and the forced psychological evaluation. He also alleges that he was subjected to false allegations that he "had mental/psychological deficits and/or conditions" and that Vosicky falsely reported to the psychologist that he had been diagnosed with schizophrenia. He claims that he was "subjected to frequent verbal abuse while employed by BWXT as a result of his perceived disability deriving from BWXT's knowledge that [his] mother suffered from paranoid schizophrenia." At this stage of the litigation before any discovery has been conducted, the Court finds that Plaintiff's allegations are sufficient to state a plausible claim for hostile work environment.[2] Given the totality of the circumstances, including the severity and frequency of the alleged harassment in a fairly short period of time, Plaintiff has alleged sufficient facts that

---

[2] The court notes that a number of the cases that BWXT relies on in support of its motion were decided at the summary judgment stage. *See, e.g., Geary v. UC Health*, No. 1:13-cv-200, 2015 U.S. Dist. 79903 (S.D. Ohio Jan. 23, 2015); *Bloomer v. Slater*, 2002 U.S. Dist. LEXIS 15683, *9 (N.D. Ill. Aug. 23, 2002); *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 Fed. Appx. 620 (6th Cir. 2010). Plaintiff's allegations of harassment are more numerous and specific than the few cases at the 12(B)(6) stage that BWXT cites as support.

allow the Court to draw the reasonable inference that his workplace was permeated with "discriminatory intimidation" based on his perceived disability that was both subjectively and objectively hostile or abusive.

Thus, BWXT's motion to dismiss Count IV is denied.

### B. Counts V and VI - Defamation and false-light invasion of privacy

Plaintiff brings claims for defamation and false-light invasion of privacy in Counts V and VI, respectively. These claims are both subject to a one-year statute of limitations. *See* Ohio Rev. Code § 2305.11(A); *Stainbrook v. Ohio Sec'y of State*, 88 N.E.3d 1257, 1265 (Ohio Ct. App. 10th Dist. 2017) ("[A] false light invasion of privacy claim[] involving allegations that would also support a defamation claim has the same statute of limitations applied to it as the defamation claim."). BWXT argues that Plaintiff's claims are time-barred because the events giving rise to them occurred, at the latest, on the day he was terminated (July 22, 2015), nearly three years before Plaintiff filed this lawsuit.

In response, Plaintiff contends that the statute of limitations for filing these claims should be equitably tolled because the EEOC took more than two years to issue his right-to-sue letter after he filed his EEOC charge. Courts in the Sixth Circuit consistently hold, however, that the filing of an EEOC claim does not toll the statute of limitations for claims based on state law. *See, e.g., Rosecrans v. Vill. of Wellington*, 2018 WL 807047, at *3 (N.D. Ohio Feb. 9, 2018) (citing *Jeffery–Wolfert v. UC Health*, 2017 WL 590296 (S.D. Ohio Feb. 14, 2017); *Macklin v. Turner*, 2005 WL 2211170 (N.D. Ohio Sept. 9, 2005)); *see also Gong v. The Cleveland Clinic Found., Inc.*, 2017 WL 433212, at *3 (N.D. Ohio Jan. 31, 2017).

Alternatively, Plaintiff argues that the Court should apply the "continuing tort theory" to

11

his claims. Under this theory, the limitations period does not begin to run until the tortious conduct ends. *Rosenbaum v. Chronicle Telegram*, 2002 WL 31890101, at *5 (Dec. 31, 2002 Ohio Ct. App. 9th Dist.). Plaintiff alleged that "BWXT falsely communicated to governmental customers and contractors that Plaintiff falsified company records and defrauded the company, making it impossible for him to find similar employment with another company that provides parts and/or materials to the U.S. Government or government contractors." (Second Am. Compl. ¶ 52). Plaintiff argues that, viewing this allegation in a light most favorable to him and drawing all reasonable inferences in his favor, BWXT "continued to defame and place him in a false light with prospective governmental employers after his termination from BWXT, the last instance of which is undetermined." (Doc. 23, at 10).

Plaintiff's argument is not well-taken. "The Ohio courts have consistently rejected efforts to restart the statute of limitations in a defamation action where allegedly defamatory information, which has already been published or spoken, is republished or retransmitted to new consumers." *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 F. Appx. 50, 55 (6th Cir. 2003) (citing, *e.g.*, *Rosenbaum,* 2002 WL 31890101, at *5) (holding that "a cause of action for defamation accrues immediately upon the occurrence of the tortious act and this is not appropriate for the continuing violation exception"); *Smith v. Natl. W. Life*, 92 N.E.3d 169, 172 n.1 (Ohio Ct. App. 8th Dist. 2017) ("Ohio has not adopted a continuing publication rule for defamation; instead, it is the first publication that controls for purposes of the statute of limitations."). Here, Plaintiff alleges that BWXT "falsely accused [him] of fraud and falsification of company reports or records" prior to his termination. (Second Am. Compl. ¶ 26) (alleging that such accusations occurred on April 30, 2015); (*see also* Second Am. Compl. ¶¶

12

122-23) (alleging that BWXT made these statements to employees and customers and that they caused his termination). Thus, Plaintiff's causes of action for defamation and false-light invasion of privacy based on these statements accrued more than one year before he filed this lawsuit. Even assuming that BWXT continued to disseminate these statements to new consumers after Plaintiff's termination, this would not restart the limitations period. Counts V and VI are therefore dismissed.

### C. Count VII - Breach of the CBA

Finally, Plaintiff brings a claim for breach of the CBA in Count VII. In it, he alleges that his "discharge by BWXT was in violation of the [CBA], as BWXT's 'investigation' was not thorough and relied upon incorrect 'facts' and assumptions generated by BWXT and the Union, leading to Plaintiff's wrongful discharge without just cause in violation of the CBA." (Second Am. Compl. ¶ 134). BWXT moves to dismiss this claim, arguing that the claim is preempted by the LMRA and subject to the six-month limitations period for "hybrid" claims under § 301.[3] Plaintiff responds that his claim is subject to the eight-year statute of limitations applicable to a breach of contract claim brought under Ohio law. Ohio Rev. Code § 2305.06.

BWXT correctly argues that Plaintiff's claim is time-barred. "A claim for breach of a CBA may only be brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185." *Kurincic v. Stein, Inc.*, 30 Fed. Appx. 420, 426-27 (6th Cir. 2002). Section 301 has no

---

[3] A "hybrid claim" is one where a plaintiff sues his employer for breach of the collective bargaining agreement and his union for breach of the duty of fair representation. Plaintiff brought a hybrid claim in his original complaint, but in his Second Amended Complaint, he alleges only a breach of contract claim against BWXT. A claim for breach of the duty of fair representation has a six-month limitations period.

13

express statute of limitations. Where a federal statute has no limitations period, the general rule is that a court should "apply the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158, 103 S. Ct. 2281, 2287 (1983). However, a court should decline to borrow the state limitations period "when a rule from elsewhere in federal law clearly provides a closer analogy than available statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Cummings v. John Morrell & Co.*, 36 F.3d 499, 506 (6th Cir. 1994).

Courts in the Sixth Circuit have consistently held that the six-month limitations period in § 10(b) of the LMRA, rather than a time limit borrowed from state law, applies in cases involving "day-to-day employment and grievance issues" or "the question of entitlement for employment." *Woosley v. AvcoCorp.*, 944 F.2d 313, 318 (1991); *see also Martin v. Lake Cty. Sewer Co.*, 269 F.3d 673, 678 (6th Cir. 2001) ("[T]his court has adopted the general rule that '[a] six-month statute of limitations should apply ... where the plaintiff [sic] claims are brought under the Agreement and involve the question of entitlement for employment under a collective bargaining agreement.'"); *Kurincic*, 30 Fed. Appx. at 427 (holding that employee's promissory estoppel claim that he would only be discharged for just cause was preempted by § 301 and subject to six-month limitation period because "§ 301 claims brought by individual employees are governed by a six-month statute of limitations"); *Goins v. Ajax Metal Processing, Inc.*, 984 F. Supp. 1057, 1064 (S. D. Ohio 1997) (applying six-month statute of limitations to breach of management/labor agreement where plaintiff alleged that his employer breached the "just cause" termination provision). The need for quick resolution of collective bargaining disputes between

14

employers and employees has been emphasized by the courts as a key reason for applying the LMRA limitations period. *Shelton v. Ohio Edison*, 2000 WL 6339948 (N.D. Ohio June 15, 2009).

Here, Plaintiff's § 301 claim involves day-to-day employment issues and the question of entitlement for employment. Moreover, although Plaintiff dropped his hybrid claim when he filed his Second Amended Complaint, this case still bears close resemblance to an unfair labor practice charge. As discussed in this Court's order addressing the Union's motion to dismiss, though Count II is labeled as a claim under the OCRA, Plaintiff alleges in this claim that the Union failed to adequately represent him because of his perceived disability.

For these reasons, Plaintiff's claim for breach of the CBA is subject to § 301's six-month statute of limitations. The limitations period begins to run "when the employee knew or should have known of the union's final action or the employer's final action, whichever occurs later." *Kashimer v. WCI Steel, Inc.*, 2000 WL 145451, at *2 (6th Cir. Feb. 1, 2000). At the latest, Plaintiff's claim accrued on December 18, 2015, when he learned that the Union was withdrawing his grievance challenging his discharge. He did not file this lawsuit until more than six months later. Thus, his claim for breach of the CBA is time-barred.

**CONCLUSION**

For the foregoing reasons, BWXT's Motion to Dismiss (Doc. 41) is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

                                                    /s/ Patricia A. Gaughan
                                                    PATRICIA A. GAUGHAN
                                                    United States District Court
                                                    Chief Judge

Dated: 10/25/18